Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 381 | **DATE** | 01/08/04 |
| **CASE TITLE** | Sims v. Schultz | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated on the attached memorandum opinion and order, defendants' motion to dismiss [6-1] and plaintiff's motion for sanctions [9-1] are denied.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| ✓ | Notified counsel by telephone. | | JAN - 9 2004 date docketed | 18 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 15 docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RT/NM | courtroom deputy's initials | 04 JAN -9 PM 1:43 | date mailed notice | |
| | | 01 03 - Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BOBBY SIMS, | ) | |
| Plaintiff, | ) | Case No. 03 C 381 |
| v. | ) | |
| | ) | |
| JEROME SCHULTZ, individually and in | ) | Judge Joan B. Gottschall |
| his official capacity as Chief of Police of | ) | |
| the Willow Springs Police Department, the | ) | |
| VILLAGE OF WILLOW SPRINGS, | ) | |
| a municipal corporation, STEVEN | ) | |
| MUSCOLINO individually and in his official | ) | |
| capacity as Trustee for the Village of Willow | ) | |
| Springs, JOHN LYNN, individually and in | ) | |
| his official capacity as Lieutenant of the | ) | |
| Willow Springs Police Department, | ) | |
| CHRISTOPHER LIMAS, individually and in | ) | JAN - 9 2004 |
| his official capacity as Village Administrator | ) | |
| of the Village of Willow Springs, TERRANCE | ) | |
| CARR, individually and in his official capacity | ) | |
| as President of the Village of Willow Springs, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

As a result of events leading to his termination, Bobby Sims sued the Village of Willow Springs and various public officials both individually and in their official capacities, including Police Chief Jerome Schultz, Village Trustee Steven Muscolino, Lieutenant John Lynn, Village Administrator Christopher Limas, and Village President Terrance Carr (collectively "defendants"). Sims alleges violations of 42 U.S.C. § 1983, for retaliation based on the exercise of his First Amendment rights, and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"), for interference with his right to twelve weeks of leave. Defendants move to dismiss both counts for failure to state a claim. Plaintiff countered with a motion for sanctions,

1

claiming defendants filed their motion in bad faith. For the reasons that follow, both motions are denied.

I. **Background**

Sims was employed as a police officer for the Village of Willow Springs from September 2000 until he was terminated in August 2002. In November 2001, Sims was ordered to sign a felony complaint which he did not believe was justified. When Sims protested, defendant Lynn allegedly told him he could be fired if he refused to sign the complaint. Sims reported this incident to the Public Integrity Unit of the Cook County State's Attorney's Office and an investigation ensued.

In May 2002, Sims learned that a fellow officer had tested positive for drug use. Following an informal meeting of several officers, Sims co-authored a memorandum expressing concern over working with an officer who had tested positive for drug use and requesting that the officer be terminated. The memorandum was signed by ten officers and forwarded to the Police Chief, the Village Administrator and the Village President. Defendants Schultz and Lynn approached each officer and requested that he remove his name from the memo. All but four complied.

A few days later, an anonymous flyer was distributed throughout the Village of Willow Springs reporting the officer's drug use and criticizing the police department's handling of the situation. Defendants began investigating who distributed the flyer, and Sims was allegedly told he would be terminated because of the flyer. Further, defendant Muscolino reportedly stated that those who made false accusations against the Village need to be punished. Soon thereafter, Sims

was served with a notice of formal interrogation and was questioned regarding dissemination of the flyer. As part of the investigation, Sims was fingerprinted.

Also in May 2002, Sims began experiencing problems with his knees, ankles and hands. After being diagnosed with inflammatory poly arthritis, Sims requested and was approved for sick leave.[1] On August 26, 2002, while still on leave, Sims submitted a written request for leave under the FMLA. Two days later, Sims was ordered to meet with defendant Schultz as part of the ongoing investigation and to discuss his medical condition. On August 30, Sims received a letter advising him that his FMLA request was approved and that his employment was terminated for taking more than twelve weeks of leave. Further, Sims was informed that the department records would reflect his failure to cooperate with an ongoing investigation and that he was subject to discipline regarding the investigation.

**II.    Analysis**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). The complaint need only set out "a short and plain statement showing the plaintiff is entitled to relief, the purpose of which is to give the defendant notice of the claims and the grounds they rest upon." *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F. 3d 750, 753 (7th Cir. 2002) (citing *Leatherman v. Tarrant Cty.*

---

[1] The complaint does not state exactly when Sims' leave began. Defendants indicated that it started at the beginning of June 2002. (Def. Mem. at 13) Thus, as of August 26, Sims apparently had been on leave for twelve weeks. None of the papers indicate whether Sims' leave was paid or unpaid.

3

*Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993)). The court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in plaintiff's favor. *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003).

A.   **First Amendment**

Plaintiff brought suit under § 1983, alleging defendants violated his First Amendment rights by harassing and ultimately discharging him in retaliation for speaking out against alleged improprieties within the police department. Defendants moved to dismiss, arguing plaintiff's speech did not address a matter of public concern and therefore was not subject to First Amendment protection.

Determining whether speech by a public employee is constitutionally protected is a two-step process. First, a court must determine whether the plaintiff speaks "as a citizen upon matters of public concern." *Connick v. Myers*, 461 U.S. 138, 147 (1983). Second, the court must balance the employee's interest in expressing himself with interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id.* at 142; *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). Because defendants do not argue that Sims' interest in expressing himself was outweighed by a legitimate interest of the Village, the court is only concerned with the first step.

In determining whether speech is of public concern, a court must look to the content, form and context of the speech. *Connick*, 461 U.S. at 147-48. Of these, content is the most important factor. *Campbell v. Towse*, 99 F.3d 820, 827 (7th Cir. 1996). The Seventh Circuit has determined that speech related to "police protection and public safety" is generally a matter of public concern. *Delgado v. Jones*, 282 F.3d 511, 517 (7th Cir. 2002). *See also Kinney v. Weaver*,

4

301 F.3d 253, 276 (7th Cir. 2002) (citation omitted) (speech regarding the misconduct of public officials, "especially when it concerns the operation of a police department," is of utmost First Amendment significance); *Myers v. Hasara*, 226 F.3d 821, 826 (7th Cir. 2000) (noting importance of public employees' right to "expose misdeeds and illegality in their departments). However, speech relating solely to personal grievances and routine performance of assigned job duties is generally not a matter of public concern. *Delgado*, 282 F.3d at 518-19; *Dishnow v. School Dist. of Rib Lake*, 77 F.3d 194, 197 (7th Cir. 1996).

Plaintiff claims he was harassed and ultimately fired as a result of his involvement in two separate incidents. First, Sims contacted the State's Attorney's after being forced to sign an allegedly unjustified felony complaint. He then participated in the State's Attorney ensuing investigation. Second, Sims met with his fellow officers and co-authored a memorandum to the Police Chief, the Village Administrator and the Village President, expressing concern over working with an officer who had tested positive for drug use and calling for the officer's termination. Contrary to defendants' contention, speech designed to (a) expose potentially unjustified felony charges brought against a member of the community, and (b) prevent an officer with a possible substance abuse problem from patrolling the community, is a matter of public concern.

This conclusion is supported by a number of cases involving police officers' reports of potential improprieties and criticism of department policies. In *Gustafson v. Jones*, 117 F.3d 1015, 1017-19 (7th Cir. 1997), a police officer's comments to co-workers, union officials and the Milwaukee Police Association criticizing his superior's handling of a shooting investigation and subsequent creation of a policy prohibiting unauthorized follow-up investigations amounted to

5

protected speech. In *Delgado*, 282 F.2d at 517-18, a police officer's internal memorandum summarizing his investigation of possible criminal activity by a close relative of an elected official amounted to protected speech. Finally, in an order dated January 17, 2002 in *Hare v. Zitek*, Case No. 02 C 3973 (N.D. Ill.) (unpublished), a police officer's report to the Police Chief, Village President, Village Trustee and ultimately to the Cook County State's Attorney of alleged embezzlement and bribery within the department was a matter of public concern.

Defendants argue Sims' comments are not of public concern because they were made during the course of his employment, were within his job duties, were in furtherance of his own personal interests, and were not made in a public forum. These arguments are without merit. Sims' communications with Village officials, not to mention the State's Attorney, unquestionably constituted speech in a public forum. Further, Sims' decision to report the alleged unjustified felony charges and to write a memorandum criticizing the department's disciplinary practices cannot be characterized as part of his assigned or routine job duties. Indeed, Sims was not required to act as he did in either instance. He alleges he acted out of concern for the safety and well being of the community. While defendants make a conclusory claim that Sims' conduct was in furtherance of his personal interests, they point to no facts that suggest Sims was motivated by a personal dispute or that he stood to gain anything as a result of his conduct; to the contrary, he was allegedly harassed and fired because of it.

Defendants cite a number of cases where the speech at issue was not protected because it was incident to assigned job functions or along the lines of a personal dispute. While defendants repeatedly urge the court to come to a similar conclusion, they have provided no convincing analysis of how these cases apply to the present allegations. For instance, defendants rely on

*Gonzalez v. City of Chicago*, 239 F.3d 939 (7th Cir. 2001).[2] In *Gonzalez*, the plaintiff claims he was retaliated against based on reports he wrote when he was working in the Office of Professional Standards. *Id.* at 940. The court found his speech was not a matter of public concern because he was reporting on his investigations as required by his employer. *Id.* at 941. Thus, the reports were created as part of his ordinary job responsibilities. *Id.* Under those circumstances, the plaintiff was acting as an employee, not a concerned citizen. *Id.* The Seventh Circuit has since limited the *Gonzalez* holding to the "routine discharge of assigned functions, where there is no suggestion of public motivation." *Delgado*, 282 F.3d at 519. Because Sims' actions were not part of his routine job duties, *Gonzalez* does not apply.

The court finds that Sims' allegations adequately suggest speech addressing a matter of public concern and state a colorable claim for retaliation under the First Amendment. Therefore, defendants' motion to dismiss plaintiff's § 1983 claim is denied.

### B. Qualified Immunity

Defendants Lynn and Schultz assert that they should be dismissed from this suit on the basis of qualified immunity. Public officials performing discretionary functions generally are shielded from civil liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The test is whether a reasonable official would have understood that what she was doing was unlawful. *Gustafson*, 117 F.3d at 1021. Qualified immunity applies unless (1) the complaint alleges facts which, if proven, would amount to a constitutional

---

[2] As plaintiff pointed out, the cases cited by defendants were discussed and distinguished in *Hare*, thus the court will not address them all here.

violation, and (2) the constitutional standards were clearly established at the time of the alleged violation. *Delgado*, 282 F.3d at 516.

Lynn and Schultz argue they are entitled to qualified immunity because even "[a]ssuming *arguendo* that Plaintiff has alleged a constitutional violation . . . the applicable constitutional standards were not clearly established at the time of the alleged conduct." (Def. Mem., at 11) According to defendants, the law is not clear as to whether "a public employee's speech related solely to his role as a public employee, and which was never presented in a public forum," is entitled to First Amendment protection. (*Id.* at 12) Again, defendants mischaracterize Sims' activities, which did take place in a public forum and did not consist solely of assigned duties.

As discussed above, "it has been clear for years that speech about police protection and public safety raises matters of public concern." *Gustafson*, 117 F.3d at 1021. It is also clear that law enforcement officers whose communications are "designed not only to convey information of possible crimes, but also additional facts that were relevant to the manner and scope of any subsequent investigation" are entitled to First Amendment protection, unless the communications fall within the routine discharge of assigned duties. *Delgado*, 282 F.3d at 519. Defendants have cited no case which casts doubt on this statement of the law. The facts alleged in the complaint, if proven, fall squarely within this framework. Thus, the court finds that defendants Lynn and Schultz should have known it would be unlawful to harass and discharge plaintiff for his comments. Accordingly, defendants Lynn and Schultz are not entitled to qualified immunity.

C. **Family Medical Leave Act**

For purposes of a motion to dismiss, a complaint must set forth facts establishing that plaintiff was entitled to FMLA leave and that defendant interfered with his right to take such

8

leave. *Divizio v. Elmwood Care, Inc.*, 97 C 8365, 1998 WL 292982, at *2 (N.D. Ill. May 28, 1998). There is no dispute that Sims was eligible for FMLA leave. Plaintiff alleges he was deprived of his rights under the FMLA because his employer failed to notify him that his sick leave counted as FMLA leave until he was terminated. Defendants argue there is no violation because employers are entitled to classify sick leave as FMLA leave retroactively.

The FMLA grants eligible employees up to twelve weeks of unpaid leave each year if they suffer from a serious health condition, among other things. 29 U.S.C. § 2612. Employers must grant leave on an intermittent or part-time basis when it is "medically necessary." *Id.* § 2612(b). However, employers may require that any accrued paid vacation leave, personal leave, or medical or sick leave be substituted for any part of the twelve week FMLA leave. *Id.* § 2612(d)(2)(B). Interfering with, restraining, or denying the exercise or attempted exercise of an employee's FMLA rights is prohibited. *Id.* § 2615.

Plaintiff points to FMLA regulations which require employers to designate leave as FMLA qualifying and to notify the employee of the designation. 29 C.F.R. § 825.208. Employers generally have two business days to provide such notice, absent extenuating circumstances. *Id.* § 825.208(b)-(c). Subsection (c) further provides:

> [t]he employer's designation must be made before the leave starts unless the employer does not have sufficient information as to the employee's reason for taking the leave until after the leave commenced. If the employer has the requisite knowledge to make a determination that the paid leave is for an FMLA reason at the time the employee either gives notice of the need for leave or commences leave and fails to designate the leave as FMLA leave (and so notify the employee in accordance with paragraph (b)), the employer may not designate leave as FMLA leave retroactively.

*Id.* § 825.208(c).

9

Resolving all doubts in favor of Sims, as is required, the court finds that he has stated a claim under the FMLA. Defendants were aware from the start that plaintiff's sick leave was potentially FMLA qualifying, yet they failed to designate it as such until twelve weeks had passed. Had defendants promptly designated Sims' leave as FMLA leave, it is conceivable that he may have taken intermittent or part time leave so as not to exceed his allotted twelve weeks. Thus, drawing all inferences in favor of plaintiff, it is possible Sims can show he was prejudiced by defendants' failure to timely designate his leave as FMLA leave.

Defendants contend that under *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002), an employer can retroactively designate medical leave as FMLA leave so long as the employee was given at least twelve weeks off. *Ragsdale* cannot be construed so broadly. In that case, the Supreme Court invalidated 29 C.F.R. § 825.700(a) which stated, "If an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." *Id.* at 88. The Court found the regulation imposed a categorical penalty "unconnected to any prejudice the employee might have suffered from the employer's lapse." *Id.* at 89. While section 825.208 was not specifically addressed, it is similar and its validity may fairly be questioned after *Ragsdale*. *See Roberson v. Cendant Travel Services, Inc.*, 252 F.Supp.2d 573, 577 (M.D. Tenn. 2003).

Nonetheless, *Ragsdale* does not prevent an employee from attempting to prove he was prejudiced by his employer's failure to provide timely notice. Indeed, *Ragsdale* requires courts to "make a fact-specific inquiry into the damage that an employee suffered because he or she did not receive an FMLA designation notice." *Stansberry v. Uhlich Children's Home*, 264 F. Supp.2d 681, 689 (N.D. Ill. 2003). *See also Donahoo v. Master Data Center*, 282 F.Supp.2d

10

540, 555 (E.D. Mich. 2003) (stating an employee can recover for actual prejudice caused by employer's failure to provide notice). More facts are necessary for the court to determine if Sims can ultimately prevail on his FMLA claim. Since this type of fact-specific inquiry is "not generally motion to dismiss territory," defendants' motion is doomed. *Homeyer v. Stanley Tulchin Assoc., Inc.*, 91 F.3d 959, 962 (7th Cir. 1996).

Accordingly, defendants' motion to dismiss plaintiff's FMLA claim is denied.

### D. Sanctions

Plaintiff urges the Court to impose Rule 11 sanctions because counsel for defendants filed an identical motion to dismiss in another case. That motion was denied. *See* order dated January 17, 2002 in *Hare v. Zitek*, Case No. 02 C 3973 (N.D. Ill.) (unpublished). Both cases allege First Amendment retaliation claims based on speech exposing some form of impropriety within a police department. So the argument goes, this case is indistinguishable from *Hare*, yet defendants filed the exact same motion in an effort to harass plaintiff and cause him unnecessary expenses. Defendants, on the other hand, argue sanctions are not warranted because the cases are factually distinct. Specifically, the *Hare* case involved embezzlement, bribery and corruption, while the present case involves much less serious "disagreements over the handling of internal police department matters." (Def. Resp., at 3). Defendants fail to recognize that the egregiousness of the alleged impropriety does not determine whether speech is protected. Thus, this distinction does little to help their case.

Although the court is not persuaded by defendants' argument that Sims was acting within the scope of his job duties, it is not frivolous. Moreover, this court is not bound by the *Hare*

11

decision, and defendants were entitled to try to persuade this court to reach another result. The court finds no sanctionable conduct.

### III. Conclusion

For the reasons set forth above, defendants' motion to dismiss is denied. Plaintiff's motion for sanctions is also denied.

ENTER:

_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 8, 2004