UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOBBY SIMS and PHILLIP WISEMAN,<br><br>Plaintiffs<br><br>v.<br><br>JEROME SCHULTZ, individually<br>and in his official capacity as Chief of Police<br>of the Willow Springs Police Department, et al.<br><br>Defendants. | Case No. 03 C 381<br>Case No. 03 C 382<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Bobby Sims and Phillip Wiseman were both formerly employed as police officers by the Village of Willow Springs Police Department ("WSPD") but were terminated in 2002. The plaintiffs subsequently sued the Village of Willow Springs ("the Village") and various Village employees, both individually and in their official capacities. The plaintiffs' legal claims overlap substantially: both plaintiffs argue that they were discharged in retaliation for speaking out about misconduct in the WSPD, and both plaintiffs assert claims under 42 U.S.C. § 1983 (2003), alleging that the defendants violated their First Amendment rights, conspired to violate their First Amendment rights, and violated their right to due process. In addition, Sims asserts a claim under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 (2000) ("FMLA"). The plaintiffs' complaints were filed separately, and Wiseman's case was originally assigned to a different federal district court judge. However, the parties filed an agreed motion to reassign Wiseman's case to this court pursuant to Northern District of Illinois Local Rule 40.4, and the court granted the motion on

1

April 16, 2003. The defendants now move the court to sever the plaintiffs' cases for trial. For the reasons set forth below, the defendants' motion to sever is denied and the cases are instead ordered consolidated for trial.

## I. BACKGROUND

Sims and Wiseman are both former WSPD patrol officers.[1] Wiseman was employed by the Village from June of 1995 until his discharge in November of 2002, and Sims was employed by the Village from September of 2000 until his discharge in August of 2002. According to the plaintiffs, the events leading to their respective terminations consist of a series of mishaps and misconduct in the WSPD which they disagreed with and were outspoken about. As will be apparent shortly, many of the relevant events involve both plaintiffs and thus the factual background relied on to support each plaintiff's claims is similar.

In 1998, Wiseman assisted the Cook County State Attorney's Office ("SAO") with the prosecution of a defendant in a case in which the WSPD had seized drugs and money. Wiseman claims that defendant WSPD Police Chief Jerome Schultz ("Chief Schultz") had discarded some of the seized evidence and that when the SAO requested the evidence, Chief Schultz ordered him to provide substitute evidence. Wiseman refused to do so, and claims that he was later disciplined for this decision.

In November of 2001, shortly after he began working for the WSPD full-time, Sims responded to a domestic battery call. When he arrived at the residence, Sims found crack cocaine on the ground. A male resident informed Sims that his wife had taken the cocaine out of their

---

[1] The factual background is taken from Sims' complaint, Wiseman's complaint, and the court's Order of January 9, 2006.

2

mailbox. Defendant John Lynn, a WSPD Lieutenant, ordered Sims to sign a felony drug possession complaint against the man's wife, but Sims protested the order because he did not believe that the order was lawful. Sims claims that Lynn threatened to fire him if he did not sign the order, and that he thereafter signed the order against his will.

Following this incident, Sims telephoned the Public Integrity Unit of the SAO to complain about Lynn's order. Wiseman, acting in his capacity as Union Stewart for the Fraternal Order of Police – the certified bargaining representative for WSPD patrol officers – assisted Sims in filing this complaint. Wiseman also discussed the incident with defendant Terrance Carr, the President of the Village. In addition, Wiseman contacted the Public Integrity Unit of the SAO on his own behalf in February of 2002. The Public Integrity Unit was conducting an investigation regarding misconduct in the WSPD, and Wiseman informed them about the incident in which Chief Schultz had ordered him to substitute evidence and also about several other undisclosed events.[2] In April of 2002, Sims and Wiseman were separately approached by Lynn regarding their statements to the Public Integrity Unit. Lynn ordered both plaintiffs to tell him what they had disclosed, and both men refused to do so. Wiseman claims that when he refused to tell Lynn what information he had provided to the Public Integrity Unit, Lynn became hostile and threatened him. Wiseman also asserts that he was subject to unwarranted discipline and that the WSPD dispatch refused to provide him with requested backup multiple times after he cooperated with the Public Integrity Unit.

In May of 2002, Sims began experiencing joint pain and was diagnosed with arthritis in his knees, ankles, and hands. He received treatment from an arthritis specialist, who provided Sims with

---

[2]Wiseman also asserts that he provided the Equal Opportunity Employment Commission with an affidavit regarding another officer who filed a discrimination complaint against the WSPD.

3

medical releases for his condition. Sims requested and was approved for sick leave from the WSPD during this same time period.

Also in May of 2002, a WSPD police officer tested positive for cocaine use. The officer was not disciplined or terminated, but was instead allowed to seek rehabilitation and remain on the force. Upon learning of this, several WSPD police officers conducted an informal meeting to discuss the issue. In conjunction with the meeting, Sims and Wiseman prepared an internal memorandum indicating that the officers were concerned about working with an officer who had tested positive for illegal drug use and requesting the officer's termination. This memorandum was signed by ten WSPD police officers and was forwarded to defendants Chief Schultz, Carr, and Christopher Limas, the Village Administrator. The record indicates that the media also obtained a copy of it, although it is not clear whether the copy was obtained from one of the plaintiffs or through other means. After receiving the memorandum, Chief Schultz and Lynn approached the officers who had signed it and requested that they remove their names; the plaintiffs contend that the request was actually an order. All but four of the officers who had originally signed the memorandum eventually did so. According to the plaintiffs, Carr was angry with them for preparing the memorandum.

Shortly after the memorandum was circulated, a flyer was also distributed throughout the Village. The flyer reported that a WSPD officer had tested positive for drug use and criticized the WSPD's handling of the situation. The record is not clear regarding who prepared and circulated the flyer, but the implication is that the WSPD thought Sims and Wiseman were responsible. The Village and the WSPD quickly opened an investigation to determine who had disseminated the flyer. Defendant Steven Muscalino, the elected Trustee of the Village, was outspoken about the flyer, expressing the opinion that any police officers who falsely accused the Village of wrongdoing should

be punished. Sims also claims that he was threatened (although he does not say by whom) with termination. In conjunction with the investigation regarding the flyer, both plaintiffs were ordered to appear for a formal interrogation at the WSPD and to submit to be fingerprinted. Sims was interrogated on June 7, 2002, and Wiseman was interrogated on July 24, 2002. Each plaintiff's interrogation was conducted by Chief Schultz, Limas, and attorneys for the Village.

On August 26, 2002, Sims requested leave from the WSPD under the FMLA, citing his medical condition. In addition to a memorandum formally requesting FMLA leave, Sims submitted a certificate from the United States Department of Labor signed by his treating physician. Two days later, Sims was again interrogated regarding the ongoing investigation pursuant to an order issued by Chief Schultz. On August 30, 2002, Sims was informed via a letter signed by Chief Schultz that his request for FMLA leave had been approved and that he had been granted twelve weeks of unpaid leave. However, the letter also informed him that his employment with the WSPD was terminated. As justifications for the termination, the letter stated that Sims' allotted FMLA leave time had already been exhausted (Sims claims he was unaware that his prior leave time was being treated as FMLA leave) and that Sims had failed to cooperate with Chief Schultz in the ongoing investigation regarding the flyers and was therefore subject to discipline. Accordingly, the letter ordered Sims to return all WSPD property in his possession immediately. Sims claims that Carr and the Village were aware of his termination and consented to it.

On September 30, 2002, counsel for Sims sent a letter to Chief Schultz indicating that Sims had returned all property belonging to the WSPD and requesting that the WSPD return certain personal property to Sims. However, on October 4, 2002, the WSPD issued a warrant for Sims' arrest. Wiseman learned of the warrant, but claims he was unable to verify whether it was valid

5

because the warrant book, station complaint card, and incident reports were all missing from the police station. Wiseman dispatched another officer to pick up Sims, and Sims accompanied the officer to the police station in order to inquire what allegations had been made against him. Once there, Sims was arrested for theft. However, he was not provided with a copy of the charges or told what conduct he was being arrested for. After Sims had been arrested, Chief Schultz and Lynn ordered Wiseman to impound and tow Sims' vehicle. Wiseman protested the order, arguing that it was unlawful, and ultimately refused to follow it.

Late in October, another flyer regarding misconduct at the WSPD was allegedly mailed to residents of the Village. On October 29, 2002, Wiseman was again interrogated about the flyers. He was also asked if he had any knowledge about Carr allegedly receiving money for selling illegal drugs or about other WSPD officers using or selling illegal drugs. Present at Wiseman's interrogation were Chief Schultz, Limas, and investigators from a private firm hired by the Village. Following his interrogation, Wiseman was ordered by Chief Schultz to submit to fingerprinting.

On November 8, 2002, Wiseman was informed via a letter signed by Chief Schultz that his employment with the WSPD was terminated. The letter accused Wiseman of involvement with both sets of flyers that had been distributed in the Village regarding misconduct in the WSPD and claimed that Wiseman had not cooperated during his interrogations regarding these incidents. The letter also cited Wiseman's refusal to comply with the order to impound Sims' vehicle, other actions taken by Wiseman during the course of Sims' arrest, and Wiseman's conduct during an unrelated arrest in May of 2001. According to Wiseman, the Village and Carr were aware of and consented to his termination. Following Wiseman's termination, the Village issued a press release indicating that Wiseman had been terminated for providing false information while under oath and had engaged in

6

other conduct unbecoming a WSPD officer.

Sims and Wiseman filed their respective complaints on January 17, 2003. On April 10, 2003, the parties filed an agreed motion to reassign Wiseman's case, which had been pending before another judge, to this court pursuant to Northern District of Illinois Local Rule 40.4. Under Local Rule 40.4, a civil case "may be reassigned to the calendar of another judge if it is found to be related to an earlier-numbered case assigned to that judge" pursuant to the relatedness criteria contained in subsection (a) and the provisions of subsection (b) are also met. N. Dist. of Ill. L.R. 40.4(b). The court granted the agreed motion for reassignment on April 16, 2003, and the plaintiffs' cases have proceeded side-by-side in this court and in discovery before a magistrate judge since that point. However, the defendants recently filed a motion sever the plaintiffs' cases for trial. It is this motion which is the subject of this order and which the court now rules on.

## II. ANALYSIS

The defendants request that the court sever Sims' suit from Wiseman's so that the cases may be tried separately. This is necessary, the defendants contend, because Wiseman's case was originally reassigned for purposes of discovery only and now that extensive discovery has occurred it is apparent that the cases are not similar. For example, the defendants note that the plaintiffs complained to the Public Integrity Unit of the SAO about different occurrences, the reasons given for the plaintiffs' terminations were different, and Sims has asserted a claim under the FMLA while Wiseman has not. Because of these differences, the defendants argue, severing the cases will reduce the time and expense required to try them and will allow the plaintiffs' respective claims to be resolved more effectively. The defendants point to different witnesses and exhibits they contend will be necessary to try the plaintiffs' claims, and argue that the jury is likely to be confused if the suits

7

are not severed.

In response, Sims and Wiseman argue that their terminations arise from the same operative facts – improprieties in the WSPD and the plaintiffs' outspokenness regarding the misconduct – and that the defendants have merely cherry-picked a few minor differences to support their argument that the cases are different. That the plaintiffs complained to the SAO about different events and were given different pretextual reasons for being terminated, the plaintiffs contend, is immaterial because they were *actually* fired for the same reason. Moreover, Sims and Wiseman point out that they have asserted the same legal claims arising out of the same series of events, with the only difference being that Sims has also asserted a FMLA claim. They also note that all of the defendants are the same and the witnesses to be called and the exhibits to be used at trial will overlap to a large extent. Thus, the plaintiffs argue, the jury is unlikely to be confused because the presentment of the cases will be virtually identical. The plaintiffs conclude that it would not be an effective use of judicial resources to sever the cases because doing so would result in largely duplicitous litigation.

While the parties have argued their positions with great fervor, they have cited strikingly little case law in support of their arguments. In fact, neither side even sets forth the proper analytical framework for the court to apply to the defendants' motion to sever. Nonetheless, the court has conducted its own survey of relevant cases, and is satisfied that it has determined the proper approach. While the court does not make a habit of doing parties' research for them, the legal analysis in this instance is relatively straightforward and this course of action was necessary in order to resolve the defendants' motion expeditiously so as not to delay trial.

In effect, the defendants' request that Sims' case be separated from Wiseman's amounts to an argument that the plaintiffs cannot properly be joined in a single suit. It should be noted that at

8

this point the court has ordered only that the cases be reassigned pursuant to Northern District of Illinois Local Rule 40.4. While Local Rule 40.4 contains some of the same requirements as the federal rule regarding joinder, *compare* N. Dist. of Ill. L.R. 40.4 *with* Fed. R. Civ. P. 20(a), and the parties asserted that many of the overlapping requirements were met when they moved for Sims' case to be reassigned to this court, the court has not yet considered whether Sims and Wiseman are properly joined. Because the defendants' motion to sever implicitly contemplates such an inquiry, however, the court will address the defendants' motion under the joinder standard contained in Rule 20(a) of the Federal Rules of Civil Procedure. *See, e.g., Brewton v. Harvey*, 285 F. Supp. 2d 1121, 1128 (N.D. Ill. 2003) (considering motion to sever under Rule 20(a)); *Smith v. Northeastern Illinois Univ.*, No. 98 C 3555, 2002 WL 377725, at *1 (N.D. Ill. Feb. 28, 2002) (same).

Rule 21 of the Federal Rules of Civil Procedure permits the court to sever an improperly joined party or claim from a lawsuit. *See* Fed. R. Civ. P. 21. Rule 21 does not include standards for determining whether a party is mis-joined, however, and so courts rely on the permissive joinder standards set forth in Rule 20(a). *See McDaniel v. Qwest Commc'ns Corp.*, No. 05 C 1008, 2006 WL 1476110, at *19 (N.D. Ill. May 23, 2006); *Wilson v. Peslak*, No. 04 C 2345, 2005 WL 1227316, at *2 (N.D. Ill. May 12, 2005). Under Rule 20(a), multiple plaintiffs may join in the same action if the following requirements are met: (1) the plaintiffs must assert a claim for relief "arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) there must be a "question of law or fact common to all" of the plaintiffs. Fed. R. Civ. P. 20(a). If either requirement is not met, the parties are mis-joined. *Smith*, 2002 WL 377725, at *1. The purpose of the liberal joinder standard contained in Rule 20(a) is to promote judicial economy, *see Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000), thereby expediting the resolution of disputes and preventing

duplicitous litigation, *see Barner v. Harvey*, No. 95 C 3316, 2003 WL 1720027, at *2 (N.D. Ill. March 31, 2003). Thus, a federal district court has wide discretion to determine whether parties have been properly joined. *See Wilson*, 2005 WL 1227316, at *2; *Smith*, 2002 WL 377725, at *1. This discretion should be exercised in favor of joinder, and "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Neither Sims nor Wiseman has requested that the court consolidate their cases for trial in the event that the defendants' motion to sever is denied and the plaintiffs are found to be properly joined. Nonetheless, given the nature of the defendants' requested relief – separate trials – the practical effect of a decision in the plaintiffs' favor would be a determination that the cases will be tried together. Therefore, if the plaintiffs are found to be properly joined, it is also necessary to consider whether the cases should be consolidated under the standards contained in Rule 42 of the Federal Rules of Civil Procedure. Rule 42(a) permits a court to order a joint trial "[w]hen actions involving a common question of law or fact are pending before the court." Fed. R. Civ. P. 42(a). Conversely, the court may order separate trials under Rule 42(b) "in furtherance of justice or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b). These standards overlap with the language and purpose of Rule 20(a), and so Rule 20(a) and Rule 42 read together create two separate questions for the court: (1) whether Sims' case *can* be joined with Wiseman's for a joint trial – i.e., whether the legal standards contained in Rule 20(a) and Rule 42(a) are met; and (2) whether Sims' case *should* be joined with Wiseman's – i.e., whether jointly trying the plaintiffs' cases would comport with the purpose and policy of Rule 20(a) and Rule 42. These inquiries will be addressed in turn.

### A. Sims and Wiseman Are Properly Joined

Under the Rule 20(a) and Rule 40(a) standards, Sims and Wiseman are properly joined in this case. First, it is clear that Sims and Wiseman are both asserting a right to relief that arises out of the same "transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). The purpose of this 20(a) requirement is to determine whether the relevant events are logically related; "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Barner*, 2003 WL 1720027, at *3 (citation and internal quotation marks omitted). Thus, the court must assure itself that each plaintiff is asserting a right to relief that stems from the same series of logically related events. In addressing this 20(a) requirement, courts generally take a case-by-case approach, considering such factors as the time period in which the events occurred, the people involved, the conduct alleged, and the pertinent geographical locations. *See Wilson*, 2005 WL 1227316, at *2; *Smith*, 2002 WL 377725, at *2.

Before addressing this factor, it warrants mention that Local Rule 40.4 mirrors this Rule 20(a) requirement; Local Rule 40.4(a)(3) provides that cases may be found to be related if they "grow out of the same transaction or occurrence." N. Dist. of Ill. L.R. 40.4(a)(3). In their agreed motion to reassign Sims' case to this court, filed on April 10, 2003, the parties asserted that Sims and Wiseman's cases are related because they raise overlapping legal claims which arise from a similar series of events. Thus, it is somewhat perplexing that the defendants now argue that the plaintiffs' cases do *not* arise from the same series of logically related events. The defendants' assertion that Sims' case was reassigned for purposes of discovery only is equally misplaced – nothing in the agreed motion to reassign or the court's minute order granting reassignment suggests any such limitation was contemplated.

11

Even absent the defendants' prior assertions, an examination of the nature and basis of the plaintiff's respective suits demonstrates that Sims and Wiseman seek relief from the same series of logically related events. Both men are former WSPD patrol officers who were employed by the WSPD during an overlapping time period and were terminated approximately two months apart. They also allege that they were terminated for the same reasons. In late 2001 and early 2002, both Sims and Wiseman reported incidents of misconduct in the WSPD (albeit different incidents) to the Public Integrity Unit of the SAO, and they cooperated with each other in doing so. In 2002, the plaintiffs learned that the WSPD had not disciplined a fellow officer who tested positive for cocaine use, and each was frustrated with what he perceived to be misconduct and corruption in the WSPD. The plaintiffs thereafter jointly drafted and circulated a memorandum opposing the WSPD's decision which had been signed by fellow officers. After this memorandum was circulated, two rounds of flyers regarding the WSPD's decision were distributed throughout the Village and the WSPD opened an investigation to determine who was responsible. It is their involvement with these events that Sims and Wiseman allege led to their terminations. Each plaintiff was interrogated multiple times by the same defendants regarding these incidents, and each plaintiff's letter of termination references his involvement with these incidents. The interrelatedness of the underlying events extends even beyond Sims' termination, for Wiseman was also subject to discipline for his role in Sims' alleged unlawful arrest one month after Sims was terminated. Finally, the plaintiffs have sued the exact same group of defendants, and for the most part have alleged that the same defendants took the same actions vis-a-vis the plaintiffs in each relevant circumstance. In sum, Sims' case overlaps with Wiseman's case to a substantial degree, and thus arises from the same series of events.

The defendants argue that Sims' case cannot possibly be related to Wiseman's to the extent

required by Rule 20(a) because Sims asserts a FMLA claim while Wiseman does not. This argument misses the point. It is true that Sims is seeking relief on a legal ground that does not apply to Wiseman. However, the remainder of the plaintiffs' claims are exactly the same, and they arise from the same series of logically related events. Both Sims and Wiseman, for example, claim that they were terminated in retaliation for giving information to the Public Integrity Unit and for opposing the WSPD's decision regarding their fellow officer's cocaine use, and argue that being terminated in these circumstances violated their First Amendment right to free speech. This is all that Rule 20(a) requires: that Sims and Wiseman "assert *any* right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a) (emphasis added).

The defendants also argue that the plaintiffs' cases are different because the WSPD gave different reasons for their terminations. This argument is somewhat of a misnomer, for each plaintiff's termination letter referenced a failure to cooperate in the WSPD's ongoing investigation. Nonetheless, the defendants are correct that Sims' letter also stated that he was terminated for exceeding his FMLA leave, while Wiseman's also stated that he was terminated for participating in the circulation of the flyers, disregarding orders during the course of Sims' arrest, and taking inappropriate actions while making an arrest in 2001. In support of their argument, the defendants cite *Barner*, where the court determined that there was no logical relationship between the claims of a large number of plaintiffs and thus granted the defendants' motion to sever. 2003 WL 1720027, at *4. The defendants' reliance on *Barner* is misplaced, however. In *Barner*, the plaintiffs alleged that they had been fired because of their race and political beliefs, but the defendant city countered that the plaintiffs had been terminated for a multitude of legitimate reasons. *Id.* at *3-4. The court

13

noted that at least four different legitimate reasons had been offered for the terminations and that the record indicated many of the plaintiffs had been fired for cause. *Id.* at *4. In addition, different supervisors were responsible for different termination decisions. *Id.*

The instant case is distinguishable from *Barner* even if the court accepts the defendants' argument that that the stated reasons for Sims' termination differ from those given for Wiseman's termination. This case involves only two plaintiffs and the defendants who are allegedly responsible for the decisions are the same. In contrast to *Barner*, where the different justifications for the terminations would have created a great deal of confusion, the plaintiffs here are alleging that they were fired for doing almost exactly the same thing. Thus, there are not multiple conflicting versions of events but merely the plaintiffs' story on one side and the defendants' on the other, with two different reasons advanced by the defendants for the terminations. Far from indicating that there is "no logical relationship between the claims," *id.*, Sims' case is intricately intertwined with Wiseman's. While the plaintiffs' cases are not *exactly* the same, Rule 20(a) does not require Sims' case to be a mirror image of Wiseman's. Accordingly, the first 20(a) requirement is met.

Second, there are common questions of law and fact between Sims' case and Wiseman's case, and therefore the second 20(a) requirement and Rule 42(a) are met. The defendants have not spent much effort on this issue, choosing instead to focus their attention on the first 20(a) requirement and arguments relating to judicial economy. The reason is obvious. The parties asserted in their agreed motion to reassign Sims' case to this court that the plaintiffs' legal claims overlap and that the factual issues in the plaintiffs' cases are nearly identical.[3] Even if the parties had not made

---

[3]Local Rule 40.4(a)(2) provides that cases may be found to be related if they "involve some of the same issues of fact or law." N. Dist. of Ill. L.R. 40.4(a)(2).

14

such explicit representations, it is clear that this factor is met. There is no question that Sims' case and Wiseman's case involve common legal issues: the plaintiffs' complaints set forth three of the exact same causes of action and the only legal difference between them, as noted, is that Sims also asserts a FMLA claim. Not only do the plaintiffs assert the same legal claims, but the actions taken by the defendants that allegedly violated the plaintiffs' legal rights are the same. That common questions of fact exist is similarly beyond dispute. As the factual background detailed above demonstrates, Sims and Wiseman tell virtually the same story about the underlying events. Therefore, the superficial requirements of both Rule 20(a) and Rule 42(a) are met and the court has the discretion to join Sims' case with Wiseman's for trial. The only remaining inquiry is whether the court should do so.

### B. Sims' Case and Wiseman's Case Should be Tried Jointly

While a federal district court has the discretion to permit multiple plaintiffs to join in the same action and try their cases together if the standards of Rule 20(a) and Rule 42(a) are met, the court also has to discretion to order separate trials under Rule 42(b). Under Rule 42(b), the court may order separate trials when doing so will avoid prejudice to the parties or will further the interest of judicial economy. *See* Fed. R. Civ. P. 42(b). In determining whether to try cases separately, the court should balance the desire to avoid duplicitous litigation and unnecessary time and expense with the likelihood of prejudice to the parties. *See Smith*, 2002 WL 377725, at *5; *G.R.P. Mech. Co.*, 2006 WL 83466, at *7.

The defendants argue that the court should sever Sims' case from Wiseman's because doing so actually favors judicial economy. For example, the defendants argue that, because of Sims' FMLA claim, different witnesses and exhibits will be necessary for each plaintiff's case. They also

argue that although many of the witnesses necessary to prove the other claims will overlap, the witnesses will be testifying about different occurrences because the plaintiffs were terminated at different times and for different stated reasons. According to the defendants, trying the plaintiffs' cases together "would blur the distinction" between the different circumstances surrounding each plaintiff's termination. *Brewton*, 285 F. Supp. 2d at 1128. This would confuse the jury, the defendants argue, and therefore it would be more convenient to try the cases separately.

Sims and Wiseman respond that it would be far more convenient to try their cases together given the significant overlap of operative facts and issues of law. The plaintiffs note that the party and non-party witnesses will be largely the same for each plaintiff's case, and therefore the exhibits will also be the same. They also point out that it would be a hardship for non-party witnesses to be subpoenaed twice. According to the plaintiffs, severing the cases would be duplicitous and would not save any time, effort, or expense.

The court agrees with Sims and Wiseman. Again, the defendants' position is belied by their representations to the court in the agreed motion to reassign Sims' case to this court. In that motion, the parties asserted that reassignment would "result in a substantial saving of judicial time and effort" and that the plaintiffs' cases "are susceptible of disposition in a single proceeding" – each of which is a requirement for reassignment under Local Rule 40.4. N. Dist. of Ill. L.R. 40.4(b)(2), (4). These assertions were true then and they are true now. "Separate trials would require a significant amount of overlapping testimony and evidence" because the majority of the substantive issues in Sims' case are the same as the substantive issues in Wiseman's case. *Smith*, 2002 WL 377725, at *5. Separate trials would therefore be a tremendous waste of judicial resources, and the court will not sanction such a result absent an equally countervailing justification, such as exceptional prejudice

to the defendants. There is no indication that such a factor is at play in this case; the defendants have not even argued that they would be prejudiced by a single trial.[4] If anything, consolidating Sims' case with Wiseman's will result in a net savings of time, money, and effort for all of the parties given the extent to which the plaintiffs' cases are related. Likewise, the defendants' concern that trying the plaintiffs' cases together may be confusing to the jury is a concern that can be easily resolved with effective trial advocacy. In this case, the plaintiffs' story may actually be less confusing if it is told jointly. Accordingly, the court determines that Sims' case will be consolidated and tried with Wiseman's pursuant to Rule 42(a).

### III. CONCLUSION

For the foregoing reasons, the defendants' motion to sever Sims' case from Wiseman's for trial is denied. The plaintiffs' cases are intricately intertwined; Sims and Wiseman each assert a right to relief arising out of the same series of events and the majority of the factual and legal issues in each case overlap. In these circumstances, Sims and Wiseman are properly joined under Rule 20(a) of the Federal Rules of Civil Procedure. There is no legitimate reason to duplicate the effort of trying Sims' case by trying Wiseman's separately, and so the plaintiffs' cases are ordered consolidated for trial under Rule 42(a).

---

[4]Any concern about possible prejudice from the joint trial of Sims' and Wiseman's respective allegations of wrongdoing by the defendants can be dealt with effectively with jury instructions.

ENTER:

/s/ _____
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 14, 2006