# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BOBBY SIMS and PHILLIP WISEMAN ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Court No. 03 C 00381 & 03 C 00382 |
| ) | |
| JEROME SCHULTZ, individually and ) | Judge Joan Gottschall |
| in his official capacity as Chief of ) | |
| Police of the Willow Springs Police ) | |
| Department, the VILLAGE OF ) | |
| WILLOW SPRINGS, a municipal ) | |
| corporation, JOHN LYNN, ) | |
| individually and in his official ) | |
| capacity as Lieutenant of the Willow ) | |
| Springs Police Department, ) | |
| CHRISTOPHER LIMAS, individually ) | |
| and in his official capacity as Village ) | |
| Administrator of the Village of ) | |
| Willow Springs, TERRANCE CARR, ) | |
| individually and in his official ) | |
| capacity as President of the Village ) | |
| of Willow Springs, ) | |
| ) | |
| Defendants. ) | |

## MOTION FOR JUDGMENT AS A MATTER OF LAW
## AS TO DEFENDANT JEROME SCHULTZ

NOW COMES the Defendant, JEROME SCHULTZ, by and through his attorneys, CHILTON YAMBERT PORTER & YOUNG LLP, and moves this Court for Judgment as a Matter of Law pursuant to Rule 50 of the Federal Rules of Civil Procedure, at the close of Plaintiffs' cases, and in support of said motion, states as follows:

Plaintiffs claim that their terminations were not justified and claim that Defendant Schultz retaliated and conspired to retaliate against them in violation of the First Amendment, violated their due process rights secured by the Constitution and violated Plaintiff Sims' rights

under the Family Medical Leave Act ("FMLA"). However, Plaintiffs are unable to substantiate their claims based on the evidence presented, warranting judgment as a matter of law in favor of Defendant Schultz.

A. **Plaintiffs' Alleged Speech Unprotected Under the U.S. Supreme Court's Decision in *Garcetti* and is Unsupported By Evidence Presented**

The evidence presented established that the petition about Officer Bermejo's illegal drug use and his alleged complaint to the State's Attorney supports that Plaintiffs' speech was part of their job duties and unprotected by the First Amendment and is unsupported by the evidence presented.

1. **Alleged Speech Unprotected Under *Garcetti***

Based on the United States Supreme Court's decision in *Garcetti v. Ceballos*, 126 S. Ct. 1951 (May 30, 2006) and the Seventh Circuit's recent decision in *Spiegla v. Hull,* 2007 WL 937081 (7th Cir. March 30, 2007), no evidence supports the argument that Plaintiffs' speech is protected by the First Amendment thereby warranting judgment in Defendant Schultz's favor. Plaintiffs' speech was related to and was part of their job duties as police officers in Willow Springs. Initially, Plaintiff approached the Village Administrator indicating that it was suspected Officer Bermejo was using cocaine. Plaintiff was then asked to and did conduct surveillance on Officer Bermejo as part of his job duties. After Plaintiffs learned that Officer Bermejo admitted to Chief Schultz that he had a drug problem, they drafted a petition promoting a drug free work environment and presented it to fellow police officers in the break room during a shift change. The reason Plaintiffs created a petition advocating a drug free work environment "to show solidarity, not only to our fellow officer, but ultimately the village administrators, the trustees, the mayor, and the like". (Trial Tr. Vol. 2 p. 85). Moreover, the reason Plaintiff Wiseman testified Plaintiffs created the petition was for his and his fellow officers' safety. (Trial Tr. Vol.

2 p. 87). Plaintiff presented the signed petition to Defendant Carr. The petition itself states:

> We, the undersigned full time Police Officers of the Village of Willow Springs have knowledge that Officer Francisco Bermejo has tested positive for cocaine on a drug test that was administered due to his promotion to Detective. We are extremely disappointed with the non action taken with Officer Bermejo and allowing him to be placed on vacation leave. We will not tolerate illegal substance abuse among our police officers and will not voluntarily work with any such person(s). It is our intention to make public that Officer Francisco Bermejo has tested positive for cocaine and will be allowed to continue to be a Willow Springs Police Officer. Officer Bermejo has not only disgraced himself but has compromised himself by buying and abusing cocaine. Officer Bermejo is indebted to the person he has bought and used cocaine with; this has and will make him ineffective and a serious liability to the department. Officer Bermejo is now a Detective, a Field Training Officer; at times he is the ranking officer on a shift, which deems him the watch commander, and head of the Police Explorer program. Officer Bermejo has betrayed his oath as a police officer and to continue to allow him to be employed as a police officer will be a detriment to all honest police officers. We respectfully request termination proceedings begin at once against Officer Bermejo. We the undersigned agree and adhere to a zero tolerance drug free work environment.

The petition was created by Plaintiffs in their capacity as police officers. Plaintiffs' actions in complaining to Village officials about Officer Bermejo, conducting surveillance, drafting the petition, promoting other officers to join in and presenting the petition to Village administrators were related to their official job duties. Therefore, under the United States Supreme Court's decision in *Garcetti* and the Seventh Circuit's decision in *Spiegla,* it is clear that Plaintiffs' speech was part of their job duties and was not protected by the First Amendment.

### 2. No Evidence Supports Plaintiffs' First Amendment Claims

Further, no evidence was offered by Plaintiffs that Defendant Schultz was aware of their alleged complaints to the States Attorney about the Slouber incident. In fact, Defendant Schultz testified that he was unaware that Plaintiff Sims contacted the State's Attorney's office regarding

3

the Slouber incident, and testified that he himself was never contacted by the State's Attorney regarding any alleged acts of wrongdoing regarding the incident. Although Defendant Schultz admitted at one time he was contacted by the State's Attorney regarding Defendant Lynn, this incident had nothing to do with the Slouber incident and was evidence barred by a motion in limine already ruled upon by the Court.

The only evidence as to Defendant Schultz produced during Plaintiffs' cases was that he interviewed Plaintiffs as part of the internal investigation Kirby and Associates was conducting, commissioned by Mayor Carr and Administrator Limas, to find out who was authoring and distributing the alleged flyers. It is undisputed that these flyers were not subject to the protection of the First Amendment. Plaintiffs do not claim that the alleged retaliation against them was a result of these flyers but rather claim that they were terminated for participating in the petition. Defendant Schultz testified that he and Administrator Limas did not simply decide amongst themselves whether Plaintiffs should be terminated. Rather, Defendant Schultz testified that he and Administrator Limas consulted with the village attorney, who relied upon the investigative firm's report to terminate Plaintiff Wiseman and relied upon the village attorney's interpretation of the FMLA to justify Sims' termination. In fact, Defendant Schultz admitted that the village attorney drafted the termination letters and he signed off on them. Clearly, Defendant Schultz's decision to terminate Plaintiffs was done at the direction of the village attorney.

In addition, the flyers distributed throughout the Village were both actually and potentially disruptive; therefore, the First Amendment balancing test favors Defendant. *McGreal v. Ostrov*, 368 F.3d 657 (7th Cir. 2004). The testimony reveals that the flyers were disseminated to the Village of Willow Springs residents, businesses, as well as outside of the Village of Willow Springs. Chief Schultz testified about the demoralizing effect on morale in the police

department as a result of the distribution of these flyers and that he received calls from other police chiefs, and vendors to the Village. These flyers were even sent to members of the judiciary in District 5 where Willow Springs cases were heard.

Plaintiffs failed to establish the existence of a conspiracy as alleged in their Complaints. The investigation conducted by the Defendant Willow Springs about the various derogatory flyers, which Plaintiffs denied distributing, was entirely appropriate. This investigation was conducted by a private investigative firm, Kirby and Associates, which is not a named party in this case. There is no evidence to suggest that any of the Defendants directed Kirby to a predetermined conclusion. Rather, the evidence has established that after conducting an extensive investigation, Kirby and Associates presented its report to the Village.

**B.** **Plaintiffs' Due Process Claims are Negated Under Provisions in the Collective Bargaining Agreement and By Their Execution of Administrative Rights Forms**

Plaintiffs' claim that they were terminated without notice or opportunity to be heard in violation of due process is contrary to the evidence presented. As Sims acknowledged, the Village of Willow Springs and the Illinois Fraternal Order of Police had entered into a Collective Bargaining Agreement which was in effect at the time of his discharge. Section 5.1 of that agreement allows the discharge of an employee. Defendant Schultz, in good faith, believed that just cause to terminate Plaintiffs existed and was based on the advice of the village attorney. A termination pursuant to the Collective Bargaining Agreement is subject to the grievance and arbitration procedures set forth in that agreement. (Plaintiffs' Exh. 7). Plaintiffs were advised of their rights to grieve their terminations in the letters they received from the Village, which they did. Plaintiffs availed themselves of both steps 1 and 2 of the grievance procedure, which were denied. (Trial Tr. Vol 2 p. 254-255). At that point, they again had an opportunity to present evidence in mitigation of his termination, but they chose not to do so. (Trial Tr. Vol 2 p. 258-

5

259).  Plaintiffs also filed requests for binding arbitration, to which the Village agreed but through no fault of Defendants was never pursued by the union or by Plaintiffs. (Trial Tr. Vol 2 p. 255).

Plaintiffs' also claim that their rights were somehow violated during the Village's internal investigation is unsupported.  Plaintiffs admitted that they were advised of their rights and executed administrative proceedings forms prior to being questioned by Chief Schultz in conjunction with the Village's internal investigation.  (See Defendants' Exh. 27 and 51). Moreover, Plaintiff Wiseman admitted he was represented by counsel for the FOP during his "interrogations" and Plaintiff Sims admitted that he was represented by Mr. Radja and the FOP during his "interrogations".  Indeed, nothing prevented their counsel from asking questions or instructing them on how to answer.

C. **Sims' FMLA Claim is Undermined by Evidence that Sims Would Have Been Terminated Regardless of his Request for Leave**

Sims claims that his rights under the FMLA were violated because he was not provided with 12 weeks of allotted leave.  Sims was provided 12 weeks of FMLA leave, but regardless of whether or not Sims believes he was provided with the appropriate amount of time off under the FMLA, he would have been terminated anyway based on the fact he could not perform the duties of a police officer and that he falsified his employment application.

    1. **Sims Could Not Perform the Functions of a Police Officer**

Sims did not work from May 1, 2002 until his termination on August 30, 2002.  The certificate provided by Sims' physician, Dr. Carpenter, indicated that the duration of Sims' condition was "undetermined" and that he was physically incapable of performing the functions of a police officer. (See, Defendants' Exh. 25).  In fact, Sims admitted that he was not able to work for more than a year after his termination, until October 2003 when he took a part time

position with Costco as a security person. The question is not whether Sims *would* return to work but rather *could* he return to work and perform the functions of a police officer. Clearly, based on Sims own testimony, he would be unable to fulfill his duties as a Willow Springs Police Officer even if he wanted to. However, the Village's interest in maintaining a full complement of police officers for the benefit of the entire community outweighs Sims' interest in continued employment, and Sims would have been terminated anyway. *Jones v. City of Gary,* 57 F.3d 1435 (7th Cir. 1995) (affirming district court's determination that post-suspension hearing was adequate protection of due process rights in light of fact AWOL firefighter, who suffered from arthritic condition, did not know when he would return to work).

Defendant Schultz testified that he consulted with Village Attorney, Don Rothschild, after receiving Sims' request for leave pursuant to the Family Medical Leave Act ("FMLA"). Defendant Schultz further testified that the village attorney advised him that Sims was subject to termination since he had already used more than the 12 weeks of leave provided under the FMLA. Defendant Schultz testified that Defendant Limas and the village attorney reviewed the days Sims had taken off and together calculated that Sims had exceeded his allowable amount of leave under FMLA. Defendant Schultz further testified that the village attorney drafted the termination letter and he simply signed off on them. Because there is no requirement under the FMLA that an employer notify an employee of back classification for FMLA leave, the Village's letter was justified. *Ragsdale v. Wolverine Worldwide, Inc.*, 535 U.S. 81, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002). In fact, the evidence presented established that Defendant Schultz relied totally on the advice of the village attorney for his interpretation of the *Ragsdale* case.

Moreover, the undisputed evidence shows that Plaintiff Sims was unable to return to work after 12 weeks of leave, and thus, could not have detrimentally relied on any

misrepresentations or omissions by the Defendants. Plaintiff Sims' testimony established that he was unable to return to work until October 2003 - more than a year after his termination. Based on Dr. Carpenter's records, it is clear that Sims knew he would not be able to return to work for some time. Plaintiff Sims' return was "undetermined"; therefore, it is clear that Sims knew he would not be able to return to work for some time. Under the Act's provisions, an employee must provide 30 days' advance notice when the leave is foreseeable. 29 C.F.R. §825.302(a). In the alternative, even if the evidence demonstrates that Sims leave was not foreseeable but came about due to exigent circumstances, Sims was required to inform the Village of his need to take FMLA leave "as soon as practicable". *Aubuchon v. Knauf Fiberglass, GMBH,* 240 F. Supp.2d 859, 866 (S.D. Ind. 2003)*; citing, Collins v. NTN-Bower Corp.,* 272 F.3d 1006, 1008 (7th Cir. 2001) (notice is essential even for emergencies); 29 C.F.R. §825.303. Sims did not provide the Village with any notice until August 26, 2002 – when he requested another 12 weeks of time off.

Regardless of whether Sims provided appropriate notice to the Village, he would have been terminated anyway because he falsified his employment application. Once the Village discovered Sims falsified application, he would have been terminated regardless of his speech. *Sullivan v. Ramirez*, 360 F.3d 692 (7th Cir. 2004); *McKenna v. Nashville Banner Publishing Co.,* 513 U.S. 352, 361-62 (1995); *Jacobs v. University of Wisconsin Hospital & Clinics Authority,* 12 Fed. Appx. 386 (7th Cir. 2001); *Kemp v. Packaging Corp. of America,* 1993 WL 462843 (N.D. Ill. 1993) (employer granted summary judgment where regardless of employer's motivation for termination, the employee would have been discharged once false information in the application was discovered – it does not matter that the discovery was not made until after termination).

WHEREFORE, the Defendant Jerome Schultz, respectfully requests this Court to enter judgment as a matter of law, at the close of all the evidence, and against the Plaintiffs.

>**s/Kenneth T. Garvey**
>Attorney Bar No. 0920827
>Chilton Yambert Porter & Young LLP
>150 South Wacker Drive, Suite 2400
>Chicago, Illinois 60606
>Telephone:  (312) 460-8000
>Facsimile:  (312) 460-8299
>Email:  kgarvey@cypylaw.com